UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

GREENPAN LTD. and GREENPAN INC.,　　　)
　　　　　　　　　　　　　　　　　　　)　　Index No. _____
　　　　　　　　　　　　　　Plaintiffs,　　)
　　　　　　　　　　　　　　　　　　　)　　**COMPLAINT**
　　　　　　　against　　　　　　　　　)　　**AND JURY DEMAND**_____
　　　　　　　　　　　　　　　　　　　)
INGENIOUS DESIGNS LLC and HSN, INC.,　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　Defendants.　　)

Plaintiffs GreenPan Ltd. and GreenPan, Inc., by and through their attorneys, Rosenberg

& Giger P.C., as and for their Complaint against defendants HSN, Inc. and Ingenious Designs

LLC, allege and aver as follows:

### NATURE OF THE ACTION

1.　　　Plaintiffs, manufacturers and distributors of the popular and top-quality GreenPan

line of ceramic non-stick cookware and kitchen appliances, bring this action seeking legal

redress against defendants Ingenious Designs LLC and HSN, Inc. for their false and misleading

use of the GreenPan brand name to market, promote and sell inferior, imitation products to

unwary consumers. As further alleged below, following GreenPan's termination of its

distribution agreement with Ingenious Designs LLC, a wholly-owned subsidiary of HSN, Inc.,

defendants began surreptitiously substituting certain GreenPan products sold on the Home

Shopping Network (and through its related website) with defendants' own knock-off products

that, while nearly indistinguishable visually from genuine GreenPan products, are not

manufactured or distributed by GreenPan and are made with a significantly inferior non-stick

cooking surface and other lower quality materials. Through this conduct, defendants have

deceived consumers into purchasing defendants' poor quality products while believing them to be genuine GreenPan products. By this action, plaintiffs seek both injunctive relief, to enjoin defendants' blatantly unlawful conduct, as well as damages for the injury to plaintiffs' trademark and business reputation, the loss of profits from diverted sales and other harm to plaintiffs that defendants' actions have caused.

## PARTIES

2.    Plaintiff GreenPan Ltd. is a Hong Kong corporation having a principal place of business at Unit 3305-08, 33/F, Queen's Road East, Wanchai, Hong Kong.

3.    Plaintiff GreenPan Inc. is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 120 White Plains Road, Suite 115, Tarrytown, New York. GreenPan Inc. is a wholly owned subsidiary of GreenPan Ltd.

4.    Upon information and belief, defendant Ingenious Designs LLC ("IDL") is a New York corporation having its principal place of business at 2060 Ninth Avenue, Ronkonkoma, New York.

5.    Upon information and belief, defendant HSN, Inc. ("HSN") is a Florida corporation having its principal place of business at 1 HSN Drive, St. Petersburg, Florida. Upon information and belief, IDL is a subsidiary of HSN.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises, in part, under the laws of the United States, in particular the Lanham

Act, 15 U.S.C. § 1051, *et seq.* The Court has supplemental jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this judicial district (a) pursuant to 28 U.S.C. § 1391(b)(1), because both defendants reside in New York State within the meaning of 28 U.S.C. § 1391(c) and defendant IDL resides within this judicial district; or, alternatively, (b) pursuant to 28 U.S.C. § 1391(b)(2), because defendant IDL may be found in this judicial district, and there is no other judicial district in which the action may otherwise be brought.

## FACTS COMMON TO ALL CAUSES OF ACTION

### The GreenPan Brand

8.      GreenPan Ltd. is one of the world's largest manufacturers and sellers of ceramic coated non-stick cookware, kitchen appliances and related products. The company sells and distributes GreenPan branded products to large retailers, including Wal-Mart, Inc., Target, Inc. and Costco, Inc., which resell the products to consumers throughout the United States and around the world.

9.      GreenPan Ltd. has registered its trademark in the appellation GreenPan with the United States Patent and Trademark Office (Registration No. 3,474,768) for use in the marketing and sale of cookware, kitchen appliances and related items. (A copy of the Certificate of Registration for the GreenPan mark is attached hereto as Exhibit A.)

10.      All non-stick cookware products and appliances manufactured by or for GreenPan Ltd. and sold bearing the GreenPan mark utilize a high quality ceramic non-stick cooking surface called Thermolon. The Thermolon surface is internationally recognized for its excellent non-stick performance, high heat tolerance and durability and the lack of chemicals or pollutants

3

found in other non-stick coatings. Thermolon is also highly regarded for its odor-free heating qualities, particularly when compared with offensive odors emitted during cooking by certain inferior non-stick surfaces.

11.     The Thermolon surface was launched simultaneously with and as a part of the launch of the GreenPan line of cookware products and kitchen appliances. Due to this initial joint launch, and GreenPan's longstanding exclusive use of Thermolon coatings, GreenPan is closely associated in the minds of the consuming public with the high-performance Thermolon non-stick surface.

12.     The use of Thermolon in GreenPan non-stick products is an important characteristic, among others, that distinguishes genuine GreenPan cookware and appliances from inferior quality products marketed and sold to consumers. In addition, GreenPan non-stick products employ superior proprietary designs, such as ergonomic handles and other specially designed elements, and are made from premium materials with excellent heat conduction and other beneficial cooking properties.

13.     Plaintiffs strictly control their manufacturing and inspection processes to ensure that all GreenPan branded products sold to consumers are of the highest quality.

14.     Since 2007, GreenPan Ltd., through its subsidiary GreenPan Inc., has engaged in the widespread marketing, promotion, distribution and sale of GreenPan branded ceramic non-stick cookware, kitchen appliances and related products within the United States. GreenPan Inc. has extensively marketed and promoted its products through its website, print advertising, in-store promotion, trade shows and related events. In addition, GreenPan branded products have been featured and promoted on national network and cable television channels and on the Internet.

4

15. Over the past five years, plaintiffs have spent more than $5 million on the marketing and promotion of GreenPan products within the United States.

16. The GreenPan brand has come to be widely regarded by consumers as a source of exceptionally high-quality non-stick ceramic cookware, kitchen appliances and related products.

IDL and HSN's Consumer Products Sales Ventures

17. Defendant IDL is a distributer of household items for sale to consumers.

18. Defendant HSN owns and operates the Home Shopping Network, the first, and one of the largest, nationally broadcast television networks dedicated to direct marketing and sale of goods to consumers. Through live and previously recorded broadcasts on the Home Shopping Network, and through its related website ("hsn.com"), HSN promotes and sells various household items directly to the consuming public.

19. Upon information and belief, IDL is a wholly-owned subsidiary of HSN. By contractual or other intra-corporate arrangement, IDL and HSN jointly promote and sell various household items through media owned and controlled by HSN, including the Home Shopping Network and hsn.com.

20. Joy Mangano, the President of IDL, is identified on hsn.com as an "HSN Executive." Among her varied responsibilities in that role, Ms. Mangano appears regularly on the Home Shopping Network to promote products being sold by IDL and HSN.

HSN Begins Selling GreenPan Products

21. Through the Home Shopping Network and hsn.com, defendants sell a line of cookware, kitchen appliances and related products known as the Todd English Collection (the

"TE Collection" or the "Collection"), which is endorsed by the highly regarded celebrity chef Todd English.  Mr. English assists in the marketing and promotion of the TE Collection, *inter alia*, by appearing on the Home Shopping Network and lending his name and likeness for use in advertising the products in the Collection, including on hsn.com.

22.     Pursuant to a distribution agreement dated "as of" March 26, 2010 (the "Distribution Agreement"), GreenPan Ltd. granted IDL the exclusive right to sell and distribute certain GreenPan branded products utilizing the Thermolon non-stick coating (the "GreenPan Products") through specified sales channels, including "live and taped direct response television programming" and related sales channels.

23.     The GreenPan Products produced by plaintiffs for IDL, which include a wide variety of non-stick cookware and kitchen appliances, have been advertised, offered for sale and sold by defendants through the Home Shopping Network and hsn.com as part of the TE Collection for more than 5 years.

24.     Defendants' exploitation of the GreenPan Products as part of the TE Collection has been extremely successful.  According to hsn.com:  "Joy [Mangano] has shared the stage with her fellow brand Chef Todd English as they launched GreenPan™ cookware, with Thermolon™ ceramic non-stick technology, creating a breakthrough in the cooking industry. GreenPan™ made HSN history, breaking all cookware sales records on TV!"

25.     Through defendants' successful promotion and sale of GreenPan Products as part of the TE Collection, consumers have come to strongly associate the GreenPan brand with the cookware and kitchen appliances offered for sale as part of the Collection.

26.     Defendants have actively encouraged and promoted the association between GreenPan and the TE Collection both on Home Shopping Network programs and on hsn.com.

6

For example, and without limitation, defendants have repeatedly referenced GreenPan in advertisements and promotional videos for the Collection and have included a "GreenPan" link at the very top of the home page for the Collection on hsn.com, which purports to direct internet users to information and offers for sale of genuine GreenPan Products that are part of the Collection.

27.     In fact, both through the "GreenPan" link on the HSN website and on Home Shopping Network programs, defendants have offered, sold and continue to offer their own inferior "knock-off" products for sale as "GreenPan" products, despite the fact that those products, which are visually almost indistinguishable from GreenPan Products, are not manufactured, designed, distributed, endorsed or approved by plaintiffs.

HSN's Sale of a "Knock-Off" GreenPan Electric Skillet

28.     The Distribution Agreement between IDL and GreenPan Ltd. terminated at the end of 2012 with the assent of both parties to that contract.

29.     Following termination of the Distribution Agreement, and pursuant to its terms, IDL had the right to continue to "market, sell, and otherwise dispose" of excess inventory of the GreenPan Products for a twelve-month "Sell-Off Period." As a result, defendants continue to market and sell GreenPan Products as part of the TE Collection, both on the Home Shopping Network and through hsn.com.

30.     One of the GreenPan Products that has been offered for sale by defendants as part of the TE Collection is a 13-inch electric skillet (the "Skillet" or "GreenPan Skillet").

31.     In or about March of 2013, GreenPan became aware that, in place of the Skillet, defendants were marketing and offering for sale, both on television and through hsn.com, a 13-

7

inch electric skillet (the "Knock-Off Skillet") that was visually almost identical to (although substantially inferior to) the genuine GreenPan Skillet.

32.      Defendants market the Knock-Off Skillet in conjunction with, and as an accompaniment to, their sale of GreenPan Products, albeit without advising consumers that the Knock-Off Skillet is *not* a GreenPan Product.

33.      On information and belief, defendants obtained the Knock-Off Skillets directly from the same manufacturer that manufactured the Skillet for GreenPan.

34.      While indistinguishable from the Skillet in appearance, with nearly identical product descriptions, and sold for the same price as the Skillet, the Knock-Off Skillet is different in at least one significant manner:  instead of the quality Thermolon coating used by GreenPan Products, the cooking surface of the Knock-Off Skillet is coated with an inferior quality ceramic non-stick material.

35.      Defendants have misappropriated and misused the GreenPan mark by marketing, promoting, offering for sale and selling the Knock-Off Skillet through the same channels and in the same manner as the Skillet – on the Home Shopping Network and hsn.com – and by selling the Knock-Off Skillet alongside GreenPan branded cookware and appliances without making any distinction between the genuine and the imitation products.

36.      Defendants' misappropriation and misuse of the GreenPan mark is exemplified, without limitation, by their offering of the Knock-Off Skillet for sale on hsn.com, commencing in or about March of 2013, at a location on that website accessible through the "GreenPan" link on the home page of the TE Collection.  The Knock-Off Skillet is prominently displayed and offered for sale at that "GreenPan" branded location on hsn.com alongside numerous genuine

GreenPan Products and without any clarification by defendants that the Knock-Off Skillet is *not* a GreenPan Product.

37.     Defendants have also conspicuously failed to clarify consumer confusion concerning the origin of the Knock-Off Skillet through their telephone ordering system. In this regard, on or about April 1 and 2, 2013, representatives of GreenPan called the HSN telephone order center and asked to purchase a "GreenPan" 13-inch electric skillet, which, in fact, was no longer offered by HSN for sale. In response to this direct request for the GreenPan Skillet, HSN failed to advise these callers that the Knock-Off Skillet being offered for sale is not a GreenPan item. Rather, HSN allowed these individuals to purchase the Knock-Off Skillet under the express belief that it was a GreenPan Product, noting in one instance that Todd English "doesn't put his name on anything that's not great!"

38.     In fact, the Knock-Off Skillet, in contrast to the GreenPan Skillet, has received extremely negative consumer reviews. GreenPan's Skillet was highly regarded by consumers and received a favorable average rating of 4.2 out of 5 on hsn.com. In contrast, as of June 5, 2013, the Knock-Off Skillet has received a significantly lower average consumer rating of 3.1 out of 5.

39.     Many of the customer comments on hsn.com are critical of the non-stick coating of the Knock-Off Skillet. By way of example only, and without limitation, customers reviewing the Knock-Off Skillet have observed:

> "I have to agree the skillet is like sandpaper on the inside. Not smooth at all. Seems everything made in China is of poor material. This is my third Todd English item will not buy any more . . . ."

> "I used it on some chicken for Easter dinner and to my disappointment the pan did stick contrary to what was said on TV . . . probably sending it back."

"Not the quality I would expect for this price. . . . This is the last purchase I will make from HSN without reading the reviews. Shame on you Todd English. You have lost all credibility in my book."

"Everything sticks to it, and I mean sticks. Very hard to get clean. I wish that I would have sent it back. Out of the hundreds of things that I bought from HSN, this is the worst."

"Everything sticks to the pan no matter how much oil or butter I use, even though it's supposed to be nonstick. The heat cycles on and off so it's difficult to tell when things are cooked. This is the worst product I have ever ordered from HSN, and I've been shopping here for at least 20 years. Needless to say, it's going back.

"I used it 4 times so far and now there is a burnt ring in the surface of the pan. I wish I could post you a photo, the ceramic has come off exactly where the heat ring is. Please don't waste your money I can't see how Todd English can even stand there with a straight face and tell you this is a good pan. Quality is worse than a Dollar store item."

40.    In addition, the non-stick coating for the Knock-Off Skillet emits an offensive,

chemical odor upon heating that is not emitted by the higher quality Thermolon cooking surface

used on GreenPan Products.

41.    As a direct result of defendants' misleading marketing and promotion of the

Knock-Off Skillet, consumers have expressed actual confusion over the origin of that product.

42.    Product reviews by users of the HSN website have expressly referred to the

Knock-Off Skillet as a GreenPan Product or have made clear their confusion concerning the

origin of the Knock-Off Skillet. By way of example only, and without limitation, customers

reviewing the Knock-Off Skillet on hsn.com have observed:

"My first experience with green pans will be my last, and I was so excited for this item but it is junk. Do not buy, go out and get a quality electric skillet you can see before purchasing."

10

"I thought the skillet was good as far as size but it was not nonstick green pan or is it? . I seared two steaks and the scortch mark wont come off. sending back."

43.　　In addition, callers to direct marketing television programs for the TE Collection broadcast on the Home Shopping Network have clearly expressed their understanding that the Knock-Off Skillet is a genuine GreenPan Product, which defendants have failed to correct.

44.　　This consumer confusion is only exacerbated by defendants' appropriation of certain original designs and texts created and owned by GreenPan in connection with the Skillet. In this regard, in their design of the Knock-Off Skillet, defendants utilized, *inter alia*, both the distinct visual design of GreenPan's temperature dial – an original design that appears on multiple GreenPan Products – and the care and use instructions of the GreenPan Skillet, making only *de minimis* alterations to each.

Defendants Reject GreenPan's Demand to "Cease & Desist"

45.　　On or about March 26, 2013, European counsel for GreenPan transmitted a letter to Joy Mangano in which he confirmed that "it is impossible to distinguish the skillets which Ingenious Designs LLC currently markets and sells from the GreenPan skillets which were marketed in 2012" and notes the "confusion of several callers [to the Home Shopping Network], who clearly are unaware that the skillets currently sold via the promotional video are different from" the GreenPan Skillet.

46.　　On or about April 6, 2013, United States intellectual property counsel to GreenPan Ltd. followed up on the above-referenced March 26 letter with a "Notice to Cease and Desist" addressed to both IDL and HSN.  In that letter, GreenPan Ltd. explicitly "demands that IDL and HSN **CEASE AND DESIST** from further advertising, sale, offering for sale or

11

importation into the United States of the 13 inch electric skillet" – *i.e.*, the Knock-Off Skillet –

and take "immediate steps to undo the harm they have already caused" by publicly clarifying that

the Knock-Off Skillet is not a GreenPan Product.

47.    GreenPan Ltd. received a response to its April 6 Notice to Cease and Desist from

counsel for HSN, who explicitly declined to cease HSN's advertising, sale and other activities

with respect to the Knock-Off Skillet, writing that "HSN reserves the right to continue to develop

the collection as it sees fit . . . ."

48.    Indeed, instead of ceasing its misleading exploitation of the Knock-Off Skillet

after receiving GreenPan Ltd.'s demands, defendants have created, marketed and now offer for

sale an additional knock-off of a GreenPan Product.

49.    In that regard, defendants have recently commenced marketing and offering for

sale on television and at hsn.com a product called the "Sear and Sizzle Electric Grilling Station"

(the "Knock-Off Grill").  The Knock-Off Grill is nearly indistinguishable from a GreenPan

Product called the "Sear and Sizzle Electric Griddle" (the "GreenPan Griddle"), which is a

rectangular electric griddle with a Thermolon ceramic non-stick cooking surface.  The only

visual difference between the Knock-Off Grill and the GreenPan Griddle is that the cooking

surface of the Knock-Off Grill contains raised lines that mimic the bars of a grill.  On

information and belief, the Knock-Off Grill utilizes the same, or a similarly inferior, non-stick

ceramic cooking surface as the Knock-Off Skillet.

50.    Defendants have advertised, promoted and offered for sale the Knock-Off Grill in

the same misleading manner as the Knock-Off Skillet, including, without limitation, by

prominently featuring the Knock-Off Grill alongside genuine GreenPan Products behind the

"GreenPan" link on the hsn.com website and by offering the Knock-Off Grill for sale on the

12

Home Shopping Network alongside genuine GreenPan Products in a misleading manner without clarifying that it is *not* a GreenPan Product.

51.    Defendants' misleading conduct is likely to cause, and has actually caused, consumer confusion concerning whether the Knock-Off Grill is a genuine GreenPan Product. For example, and without limitation, one consumer commented concerning the Knock-Off Grill on the HSN website as follows:

> "I was so happy when I saw this advertised; my current electric grill has teflon & food is always sticking. I do have several other GreenPans that are holding up very well. In the instructions: you have to use oil to cook. I thought the purpose of the GreenPans were to cook/fry oil free. Also, right out of the box the grill was wobbly & unsteady. It's going back."

52.    On information and belief, defendants intend to create additional imitation versions of genuine GreenPan Products for sale as part of the TE Collection, which they intend to market and offer for sale in the same misleading manner as the Knock-Off Skillet and the Knock-Off Grill.

53.    Defendants have acted in the manner alleged herein for the express purpose of trading off the goodwill of GreenPan Products and to deceive and confuse consumers into believing that, when they purchase the Knock-Off Skillet and the Knock-Off Grill, they are acquiring genuine GreenPan products.

## COUNT I

### Trademark Infringement – Violation of 15 U.S.C. § 1125(a)

54.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

55.     This claim seeks redress for defendants' ongoing misuse of the GreenPan mark, false designation of origin and misleading representation of a connection between plaintiffs and defendants' inferior, imitation versions of GreenPan Products.

56.     The methods that defendants have used to advertise, promote and sell the Knock-Off Skillet and Knock-Off Grill have caused, and will likely continue to cause, confusion, mistake and deception of consumers that those products originated with, or are sponsored or approved by plaintiffs.

57.     The acts of defendants complained of herein have caused damage to plaintiffs' reputation for high quality ceramic non-stick cookware and kitchen appliances and have injured the goodwill associated in the minds of the consuming public with the GreenPan mark, thereby causing irreparable harm to plaintiffs for which there is no adequate remedy at law.

58.     In addition, plaintiffs' misuse of the GreenPan mark and intentional creation of a misleading association between that mark and the Knock-Off Skillet and Knock-Off Grill has diverted sales of GreenPan Products from plaintiffs to defendants and caused plaintiffs to suffer monetary damages in an amount to be determined at trial.

59.     Upon information and belief, defendants have engaged in the foregoing acts willfully and with intent to cause – and profit illicitly from – confusion, mistake and deception of consumers as to the origin, sponsorship or approval of the Knock-Off Skillet and Knock-Off Grill.

14

## COUNT II

### Unfair Competition – Violation of N.Y. Gen. Bus. Law § 350

60.     Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

61.     In advertising, promoting and offering for sale the Knock-Off Skillet and Knock-Off Grill, as alleged above, defendants misrepresented those products as genuine GreenPan Products and failed to correct the confusion of consumers concerning the true origin of those products.

62.     Defendants' misrepresentations and omissions were likely to mislead, and did in fact mislead, reasonable consumers into purchasing poor quality products – *i.e.*, the Knock-Off Skillet and Knock-Off Grill – while believing that those inferior products originated with or were sponsored or approved by plaintiffs.

63.     In advertising, promoting and offering for sale the Knock-Off Skillet and Knock-Off Grill, defendants compete for consumer purchases with plaintiffs' genuine GreenPan cookware and kitchen appliance products, including the Skillet and the Griddle.

64.     Defendants' misrepresentations and omissions have diverted sales of genuine GreenPan cookware and appliances from plaintiffs and have injured the reputation of plaintiffs as manufacturers and sellers of high quality non-stick cookware and kitchen appliances.

65.     As a result of the foregoing, plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III

### Injury to Business Reputation – Violation of N.Y. Gen Bus. Law 360-L

66.     Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

67.     The GreenPan mark is inherently distinctive and has come to be associated in the minds of consumers with high quality ceramic non-stick cookware and kitchen appliances.

68.     Defendants advertising, promotion, offering for sale and sale of the Knock-Off Skillet and Knock-Off Grill, as alleged above, was intended to mislead, has misled and will likely continue to mislead consumers into falsely believing that those inferior products originated with or are sponsored or approved by plaintiffs.

69.     The false association between the GreenPan mark and defendants inferior Knock-Off Skillet and Knock-Off Grill has tarnished plaintiffs' business reputations and injured the goodwill associated with the GreenPan mark.

70.     The injury to plaintiffs' business reputations and the GreenPan mark is irreparable, and no adequate remedy exists at law.

## COUNT IV

### New York Common-law Unfair Competition

71.     Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

72.     The methods that defendants have used to advertise, promote and sell the Knock-Off Skillet and Knock-Off Grill have caused, and will likely continue to cause, confusion,

mistake and deception of consumers that those products originated with, or are sponsored or approved by plaintiffs.

73.     The acts of defendants complained of herein have caused damage to plaintiffs' reputation for high quality ceramic non-stick cookware and kitchen appliances and have injured the goodwill associated in the mind of the consuming public with the GreenPan mark, thereby causing irreparable harm to plaintiffs for which there is no adequate remedy at law.

74.     In addition, plaintiffs have misused the GreenPan mark, and intentionally created a misleading association between that mark and the Knock-Off Skillet and Knock-Off Grill, thereby diverting sales of GreenPan Products from plaintiffs to defendants and causing plaintiffs to suffer monetary damages in an amount to be determined at trial.

75.     Defendants have undertaken these actions willfully and in bad faith, as evidenced, *inter alia*, by (a) their design and procurement of the Knock-Off Skillet and Knock-Off Grill; (b) their ongoing false and misleading designation of those products as GreenPan Products despite evidence of actual consumer confusion; and (c) their baseless rejection of plaintiffs' Notice to Cease and Desist.

76.     As a result of the foregoing, plaintiffs have been damaged in an amount to be determined at trial.


## COUNT V

### Unjust Enrichment

77.     Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

17

78.     Through their misleading advertisement, promotion and sale of the Knock-Off Skillet and the Knock-Off Grill, as alleged above, defendants have enriched themselves at the expense of plaintiffs by causing consumers to purchase those inferior products based upon a false association between those inferior products and plaintiffs.

79.     As such, defendants have profited from their misleading advertisement, promotion and sale of the Knock-Off Skillet and Knock-Off Grill.

80.     It is against equity and good conscience to permit defendants to retain the profits that they have reaped from their misleading advertisement, promotion and sale of the Knock-Off Skillet and Knock-Off Grill.

81.     As a result of the foregoing, the Court should order defendants to disgorge to plaintiffs all profits and other amounts by which they have been enriched as a result of their misleading advertisement, promotion and sale of the Knock-Off Skillet and Knock-Off Grill.

## PRAYERS FOR RELIEF

WHEREFORE, based upon the foregoing allegations and averments, plaintiffs GreenPan LLC and GreenPan Inc., respectfully demand judgment against defendants, as follows:

A.     For an order preliminarily and permanently enjoining defendants (1) from continuing to market, promote, offer for sale or sell the Knock-Off Skillet and the Knock-Off Grill in such a manner as to falsely suggest that those items are GreenPan Products or that they originated with or are sponsored or approved by plaintiffs and (2) from committing any other misleading or deceptive acts intended or likely to cause members of the trade or consumers to falsely believe that any non-GreenPan cookware or kitchen appliance that defendants offer for sale has originated with or is sponsored or approved by plaintiffs.

B.     For an award of any and all profits derived by defendants from the sale of the Knock-Off Skillet and Knock-Off Grill and any additional damages sustained by plaintiffs as a result of defendants' false designation of origin, misrepresentations, omissions, unfair competition and other defalcations as alleged herein.

C.    For an accounting, the imposition of a constructive trust, restitution of defendants' unlawful proceeds, and damages according to proof.

D.    For plaintiffs' costs incurred in this action, including reasonable attorneys' fees pursuant, *inter alia*, to 15 U.S.C. § 1117(a).

E.    For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues and claims so triable.

Dated:   June 7, 2013
         New York, New York

ROSENBERG & GIGER P.C.

By: _____
    Matthew H. Giger
    Brett T. Perala
    488 Madison Avenue, 10th Floor
    New York, NY  10022
    Tel  (212) 705-4824
    Fax  (212) 593-9175

*Attorneys for Plaintiffs*

# EXHIBIT A

Int. Cls.: 11 and 21

Prior U.S. Cls.: 2, 13, 21, 23, 29, 30, 31, 33, 34, 40 and 50

Reg. No. 3,474,768

United States Patent and Trademark Office

Registered July 29, 2008

Corrected

OG Date Aug. 4, 2009

## TRADEMARK
## PRINCIPAL REGISTER

# GREENPAN

GREENPAN LTD (HONG KONG COR-PORATION)
71 DES VOEUX ROAD CENTRAL
ROOM 1502-3A
TSIM SHA TSUI, KOWLOON, HONG KONG

THE MARK CONSISTS OF STAN-DARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

PRIORITY CLAIMED UNDER SEC. 44(D) ON BENELUX APPLICATION NO. 1132702, FILED 4-4-2007, REG. NO. 0821490, DATED 7-5-2007, EXPIRES 4-4-2017.

FOR: ELECTRIC AND NON-ELEC-TRIC FONDUE SETS COMPRISED OF ELECTRIC AND NON-ELECTRIC FON-DUE POTS; ELECTRIC WATER KET-TLES, IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FOR: PANS; POTS; NON-ELECTRIC COOKING UTENSILS, NAMELY, NON-ELECTRIC GRATERS AND GRILLS; FISH PANS; NON-ELECTRIC WOKS; NON-ELECTRIC WATER KETTLES; COOKING POTS; KITCHEN AND HOUSEHOLD CONTAINERS; THERMAL INSULATED CONTAINERS FOR PRE-PARING, PRESERVING, KEEPING HOT AND SERVING FOOD AND BEV-ERAGES, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).
SER. NO. 77-187,898, FILED 5-23-2007.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Aug. 4, 2009.*